By the Court. Duer, J.
An attentive examination of the interesting questions which this case involves, has compelled our assent to nearly every proposition for which the learned Counsel for the plaintiff contended, and we are therefore under the necessity of assenting to bis conclusion, that the plaintiff was fully entitled to the judgment she has obtained.
The first question relates to the validity of the will of her father, from which she derives her title, and who, it is admitted, died seized of the house and lot in controversy.
We strongly incline to think that this is a question which the defendant, Ford, was not at liberty to raise. In his answer and upon the trial, as well as upon the argument before us, he has insisted upon the validity of the lease to Hodges, as a proper execution of the power to lease given by the will. It is from the will, therefore, that he derives the title he has asserted, and it may well be doubted whether he was not estopped from denying the legality either of its execution or its provisions. But, as this objection was not taken by the counsel for the plaintiff, upon the hearing, we do not think we should be justified in now saying that, had it been raised, it would have been allowed to prevail. It is our invariable rule, never to decide a cause upon a point not argued by counsel, unless it has been submitted without argument and without points. We proceed, then, to the main question, whether the trust created *137 by the will suspended the power of alienation, as to the property it embraced, beyond the period limited by the statute. And if we are to look merely at the -terms of the will, it cannot be denied, that even upon the plaintiff’s construction, the devise in trust was wholly void. By its terms, it suspended the power of alienation during the Eves of those children whom it named, and had all these been Eving when the testator died, there would have been a clear suspension of the power of alienation beyond the statutory period. Two, only, of the children, however, were then living; and in applying the statutory rule to the provisions of a will, it is certain, that Eves in being at the death of the testator, are alone to be considered. (Lang v. Ropke, 5 Sand. S. C. R. 375.)
The question, then, is, whether the devise to the trustees is so framed as to involve a suspense of the power of aEenation, for any period beyond the Eves of the two children who survived the testator, the plaintiff and her brother; for, if it was the intention of the testator, as coHected from his whole wEl, that the estate of the trustees should then cease, and the property become alienable, the objection that the trust creates what in judgment of law is a perpetuity, is plainly groundless; and no other objection to its legality has been, nor, as we think, can be stated.
We are far from saying, although the conclusion at which we have" arrived is favorable to the plaintiff, that this question is free from difficulty; for it cannot be denied that the provisions of the will are somewhat perplexed, and involve a seeming contradiction. The devise to the trustees embraces all the property, real and personal, of the testator, and especially his two houses and lots in Nassau street; and the trustees are to have and hold the same, during the natural Eves of his children, upon trusts that, rejecting superfluous words, may be stated as follows:—
1. As to the two houses and lots: that the trustees, as long as they shall continue to receive the rents and profits thereof, shall see that the same are kept in necessary repair, and, if thought expedient, be insured against damage by fire, the expenses of such repairs and insurance to be borne by the persons beneficially interested under the provisions of his will.
2. After defraying these expenses, to apply out of the rents and profits not only of the said tenements, but of his whole estate, *138 so much as may be necessary towards the proper support and maintenance of his wife Sally.
3. In case of the marriage of Ms wife, to pay to her out of the rents and profits aforesaid, in half-yearly payments, an annuity of one hundred dollars. This provision for his wife to be in lieu of her dower, and if she shall insist upon her dower, then she is to take no benefit under his will.
4. To distribute, and pay yearly, the rest and residue of the aforesaid rents and profits so long as the trustees continue to receive those of the two houses and lots, to his three children, naming them, share and share alike; in case of the death of either, without issue, Ms or her share to go to the survivors, but if either shall die leaving issue, the children to take the share of the parent so dying.
5. After the death of his wife, to pay the whole of the aforesaid rents and profits, deducting the expenses, costs, and charges before mentioned, to his children and their heirs, share and share alike.
6. The will then directs, after some special provisions relative to the payment of the share of his daughter, the plaintiff; that the trustees, from and after the death of all the children, shall stand seized and possessed of all his real estate, including the two houses and lots¡ in trust for the benefit and to the use and uses of such heirs of his children as shall then be living, and shall execute and deliver conveyances of the said real estate to the persons then entitled under the will.
Although in this analysis of the trusts of the will, the provisions are given in a very condensed form, we are satisfied that none have been omitted that have the slightest bearing upon the question to be decided. We proceed then to the observations, that a full exposition of the meaning and legal effect of the trusts of the will, as we have stated them, seem to require.
If the question stood alone upon the words in the habendum clause, “ to have and hold the same during the natural lives of my children,” it would be wholly free from doubt, since it cannot be denied that these words limit the duration of the estate of the trustees to that of the lives of the two children living at the death of the testator. To language so explicit, no other construction can be- given. It is this construction, therefore, that *139 we are bound to adopt, unless we shall find that it is plainly overruled by subsequent and inconsistent provisions in the will.
The first trust of the will following the habendum clause, as we have seen, is confined to the rents, issues, and profits of the two houses and lots, and is to last no longer than the trustees shall continue to receive them, and these last words seem to imply that the estate of the trustees in the houses and lots was meant to terminate before the trust embracing the residue of the property devised: an inference which is strengthened by the repetition of the words in a subsequent clause.
The second trust relates to the provision made for the support and maintenance of the wife of the testator. Whether this provision, from its nature, and by its necessary legal effect, operated to suspend the power of alienation during the life of the wife, as well as during the fives of the children, and in relation to all the property, including the two houses and lots that the devise in trust embraces, is a question that we shall hereafter and separately consider. It is enough now to say, that there are no express words, inconsistent with those in the habendum, by which the estate of the trustees is made to cease upon the death of the children. There are no words by which the trust estate is made to continue during the fife of the wife, should she survive the children.
The next trust provides a fixed annuity for the widow, in the event of her marriage; and, by a subsequent clause, the whole provision for her that the will makes, is made to depend upon her election to take or renounce her dower. That she elected to take the provision in the will, in lieu of her dower, was assumed and conceded upon the hearing before us. Indeed, the argument as to the effect of this provision in the will, rested entirely upon this concession. Had she taken her dower, the provision in the will would have been rendered void, and no question as to its effect could have arisen.
The fourth trust merely directs the payment of the surplus rents and profits to the three children during their fives, share and share alike, and requires no special observation, except that this payment is to be made only while the trustees should continue to receive the rents and profits of the two houses and lots.
The trust that follows, provides, that after the death of the wife, the whole rents and profits, deducting expenses and charges, *140 should be paid to the children; and it was upon the words, “after the death of my wife,” that the able counsel for the appellant laid much of the stress of his argument, contending that they necessarily implied that the trust estate, and the consequent suspense of alienation, were meant to continue during the life of the widow—and such, at first view, might seem to be their import. But a brief reflection sufficed to convince us that such is neither the necessary import nor the reasonable construction of those important words. The death of the wife which is referred to, is her death during the lifetime of the children, and is therefore perfectly consistent with the supposition that the estate of the trustees was intended to cease upon the death of all the children; that it was intended to cease, notwithstanding the wife might survive them; and it is plain that upon this construction the suspense of the power of alienation is confined to the lives of the two children, living at the death of the testator, just as certainly as if they alone had been named in the will as the persons entitled to receive the. whole rents and profits during their lives. Had the testator, by an agreement in his lifetime, charged the rents and profits of his estate with the payment of an annuity, during the lives of his children, living at his death, we apprehend that it would never have been contended that the life of the annuitant was to be taken into consideration in determining whether the suspense of the power of alienation exceeded the statutory limits. If in the case before us, no payments were to be made by the trustees to the widow, after the death of the children, it is in principle exactly the same as that which we have supposed. Nor is this all; the construction that we have shown that the words used plainly admit, is also that which, as in itself the most reasonable, we are - bound to adopt. It is only by its adoption that the provisions of the will can be rendered consistent, and a palpable contradiction be avoided; and to reject it would be to deny the authority of one of the safest and soundest rules of interpretation that in the construction of written instruments, Courts of justice have hitherto held themselves bound to follow. The construction of the appellant would strike the words “ during the natural lives of my children” from the habendum clause, and would rob of their meaning the provisions next to be referred to, and which *141 comprise the last duties that the trustees are required to perform. These provisions declare that the trustees, from and after the death of all the testator’s children, shall stand seized and possessed of all the real estate, houses and lots devised to them in trust, for the benefit and to the use or uses of such heirs of his children as shall then be living; and shall execute and deliver conveyances of the real estate to such person or persons as shall then be entitled under the will. We do not think that it is possible to state a reasonable doubt as to the meaning and legal effect of these provisions. The trust which they declare, is not active but passive, and the operation of the words, “for the' benefit, and to the use or uses,” is not at all affected by the subsequent direction to' convey. The direction, if not unmeaning, was wholly superfluous. It is true that at common law, a direction to convey was deemed an active trust, so that until executed the legal estate remained in the trustees, (Clarke v. Davenport, ante, p. 95,) but as the Rev. Stat. have abolished all active trusts except those which they expressly authorize, it is certain that the rule of the common law can no longer be followed. The use which the previous words, “for the benefit,” &c., declare, is a use which had the wife survived the children, the statute would have executed instantly upon the death of the children, by vesting in their heirs the whole estate, legal' and equitable, (1 R. S., pp. 727, 728, § 47, 49 ;) nor would any conveyance, or demand of a conveyance, have been necessary to have enabled them to recover the possession, had the trustees refused to surrender it. It must have been held that the words of the will, interpreted by those of the statute, gave them an immediate and perfect title. It follows that unless we expunge from the will the provisions we are considering, we are bound to say that it was the certain intention of the testator, that upon the death of all his children the trust created by the will should, as to his real estate, wholly cease and determine. We add, that the same construction must have been given to these provisions, even had the will in a prior clause in terms declared that the trust estate should continue during the life of the wife, for the rule appears to be settled that where there are two repugnant clauses in a - will, it is the intention which the last declares that the Court is bound to execute.
*142 The result of this examination of the will is, that it contains no clause or expressions from which it can be fairly deduced that the testator intended that the trust estate should continue during the life of his wife, but that, on the contrary, it appears to be certain that, in respect to his real estate, he intended it should cease wholly and absolutely upon the death of his children, whether his wife should or should not survive them. Hence, if the suspense of the power of alienation was limited by the duration of the estate of the trustees, it lasted no longer than the lives of the two children living at the death of the testator, and had therefore no effect on the validity of the will.
It is said, however, that a suspense of the power of alienation, during the life of the wife, was necessarily created by the nature of the provision made for her support, and which it was the manifest intention of the testator that she should continue to receive, in one or other of its alternative forms, during her life. As this provision was payable out of the rents and profits of the whole estate, real as well as personal, it is asserted, that its necessary effect was to suspend the power of alienation, in respect to the whole and every part of the estate, so long as the obligation of its payment remained in force, and that, to secure its payment, the trust ought therefore to be construed as remaining in force for the same period—namely, the life of the wife.
The argument is specious, but it is not difficult to show that it rests upon premises erroneously assumed. It cannot be denied that the provision for the wife was meant by the testator to be a provision for her life: such is the necessary interpretation of the language he employs; nor do we at all doubt, that, had the wife survived the children, the obligation for the payment of the pro-, vision would have remained in force. But as we must hold that the estate of the trustee was intended to cease upon the death of the children, the provision for the wife, had she survived the children, would no longer have been the subject of a trust, since the only trust in relation to it.which the will creates, would then have ceased; but it would have been effectual simply as a charge upon the rents and profits of the real estate, to which the heirs of the children would then have been entitled. Whether the charge would have operated as a suspense of alienation, is a question that will hereafter be considered.
*143 It was assumed by the learned counsel for the appellant, that, as the provision for the widow was payable out of rents and profits, the trust for its payment was referable, and could only be referred to the 3d sub. in § 55, in the Statute of Uses and Trusts, which sanctions an express trust “for receiving the rents and profits of lands, and applying them to the use of any person during the life of such person,” and that, as the beneficial interest of the widow was inalienable under § 63, and any conveyance of the trustees would have been void under § 65—it was a necessary consequence that the power of alienation was wholly suspended, so long as the provision continued to be payable.
The error of this argument consists in its premises, for, be they even admitted to be true, the truth of the conclusion could not be disputed—that a trust, under sub. 3 in § 55, suspends the power of alienation is settled and familiar law. But if the trust for the widow was not a trust of this class and description, there is no ground whatever for the assertion, that it suspended at all the power of alienation; and that it is not such a trust, we consider to be settled by the decision of the Court of Errors, in Hawley v. James, as interpreted and followed by this Court in Lang v.Ropke. The provision for the widow, although limited to her support and maintenance; was in its nature an annuity, and its amount as such; that is, the sum to be annually paid might have been fixed by a Court of Equity, (2 Hare, 607; 10 Simons, 293.) An annuity, when created by a will, is a legacy, and when payable out of rents and profits, a charge upon lands, and it is therefore to sub. 2 in § 55 that the trust, for its satisfaction, must be referred. Hence, in this case, had the three children named in the will survived the testator, although the trust for them, as creating an undue suspense of alienation, would have been clearly void, the provision for the wife, as free from the objection, would have been sustained as valid. Such, under exactly the like circumstances, was the judgment of the Court in Hawley v. James, and it is only to be explained upon the ground, that a trust for the payment of an annuity out of rents and profits, although it may seem to fall within the words, is not a trust for the reception and application of rents and profits within the meaning of the statute. The interest of a person for whom a trust is created, under the 2d sub. of § 55, is not made *144 inalienable by any provision in the statute. Hence, the wife in this case had an unrestricted power of disposition. She might have extinguished the provision made for her by a release, or have accepted a sum in gross in its satisfaction. It created, therefore, no suspense of alienation, even during the lives of the children and the continuance of the trust.
But even were a different construction to be given to the statute,—the construction for which the appellant contends—it is certain that the expiration of the trust must have been held to put an end to any suspense of alienation that its terms created Had the wife survived the children, the provision for her sup port would have been a charge upon the real estate in the possession of the heirs of the children, as owners; and it would be an extravagant as well as novel doctrine that a charge upon lands in the possession of the owner, creates the relation of trustee and cestui que trust, so that where the charge is upon rents and profits, neither the owner can sell the lands nor the person entitled transfer or assign the charge. A charge upon lands, in the possession of the owner, is simply a debt, for the payment of which the lands are a security.
It is certain that the common law in such a case imposed no restriction upon the transfer either of the lands or of the debt, and to our minds it is equally certain that none has been imposed by the statute. It is needless, however, to pursue the discussion, as the point has been expressly decided by this Court, and this decision, unless demonstrated to be wrong, we are bound to follow. (McGowan v. McGowan, 2 Duer 57.)
Hitherto we have taken no notice of the allegation that there was a suspense of alienation during the life of the granddaughter of the testator, Sarah Ann Sands, as well as during the lives of the children and widow. Although this position is taken in the printed- points of the appellant’s counsel, according to our recollection he laid very little if any stress upon it in his argument, probably from the conviction that it was open to a short and conclusive reply. It is very doubtful whether the granddaughter, under the provisions of the will, became entitled, upon the death of the testator, to any share of the rents and profits, but, admit-; ting that, according to the intention of the testator, she then became entitled to the share that would have belonged to her *145 father, had he survived the testator, and that her interest, so long as it continued, was just as inalienable as that of the children, still it is manifest and certain that her power of alienation was suspended, not during her life, but only during the lives of the children, since, had she survived them, she would have been entitled as heir to an absolute fee in the real estate, from which the rents and profits in which she had shared had arisen. Her power of disposition would then have been unlimited.
Our conclusion is that the will of the testator created no suspense of the power of alienation beyond the lives of the two children living at his death, and consequently that the devise to the trustees was, in all respects, valid.
The will being valid, it follows, and it is not denied, that the deed from Sarah Ann Sands, and her husband, to the defendant Byrns of an undivided half of the house and lot in question was wholly void, since at the time of its execution and delivery, she had no interest whatever in the premises that she was competent to convey, nor did she acquire any during her life. The only question, therefore, that remains upon the merits is, whether the lease granted by the defendant Byrns as trustee to the defendant Hodges, can be upheld as a proper execution of the authority given to the trustees by the will. The lease is certainly void if it appears upon its face, or was proved upon the trial, that the trustee in malting it exceeded his powers; and it is scarcely necessary to add that if the lease from the trustee to Hodges was void, that from Hodges to the appellant must be equally so, unless the alleged absence of fraud on his part is alone sufficient to render it valid. The authority given by the will to the trustees is to make leases of the premises devised, for a term of years not exceeding twenty-one years from the making thereof as they may deem expedient, so that in every lease so made there shall be reserved “ the best and most improved year’s rent that can be gotten.” And the allegations on the part of the plaintiff are, that the trustee, in making the lease in question, exceeded his authority, and violated his trust, by making the term of twenty-one years for which it is granted, commence in possession on a future day, and by reserving a rent for less than it appears from the evidence on the trial and the Judge at Special Term has found could have been obtained. And if either of these objee *146 tions shall appear to be well taken, it will be our duty to declare that the lease was void as soon as it was executed—void in its creation.
The lease in question purports to have been executed and delivered on the 20th of December, 1849—and grants and demises to the party of the second part, the defendant Hodges, the house and lot now in question, to have and to hold the same from the 1st of May, 1850, for and during the fill end and term of twenty-one years, thence next ensuing. The lease by its terms was intended to vest, and if valid would have vested an immediate interest, termed in law an interesse termini, in the lessee (1 Inst. 4, 6 b., 2 Crabb’s Law of Real Property, §§ 1269, 1300.) But the term which it grants by express terms was, not to begin to run, in other words, was not to commence in possession until a future day. Hence, if the words in the power to lease, as granted*by the will, “from the making thereof,” mean, as they unquestionably do, the making of the lease, and if they necessarily import that the term to be granted must be computed from the execution and delivery of the lease; and if the law is settled, that when a power to lease is confined to leases in possession, a lease to commence in possession on a future day is wholly void; the objection, that the lease in question was void in its creation, and void upon its face, admits of no reply. The cases, however, that were cited by the counsel for the plaintiff, are alone conclusive to show that the necessary import of the words “from the making thereof,” is such as has been stated (Vide also Crabb’s Real Property, § 1301, 1316, 1359) and that when a power to lease is confined to leases in possession, and not in reversion, a lease to commence in possession on a future day, is wholly void. To the cases cited by the counsel, many might readily be added, but I shall content myself with referring to the leading and celebrated case of Pugh v. The Duke of Leeds (Cowper 714) in which all the prior authorities were carefully reviewed, and the whole subject elaborately discussed.
In this case, the power to lease was confined to leases “ in possession, and not in reversion;” and the lease in question was for the term of twenty-one years, “ from the day of its date.” In Maths v. Ash, 2 Salkeld 413, and perhaps in other cases, it had been held, that a lease to commence from its date included *147 the day of its date, but when it is to commence in possession from the day of its date, the day is excluded—and in Pugh v. Leeds, it was admitted by the counsel, and by the judges, that if this construction must be followed the lease in question could not be sustained, since thus construed, it was a lease to commence on a day subsequent to its execution, and, therefore, void, as not warranted by the power. The only question, therefore, was, whether the court would suffer its judgment to be controlled by the earlier cases, or reject the refined and in truth verbal distinction upon which they proceeded. As might be expected, Lord Mansfield and his brethren rejected the distinction as unreasonable, and his Lordship said, That the word “ from” not only in vulgar use, but in strict propriety of language, might be used either in an inclusive or exclusive sense—that in all cases it was to be construed according to the intention of the parties; and that in the case before them it was necessarily used and understood by the parties in a sense that would render their deed effectual. The lease was held to be valid, as not contravening the terms of the power.* I have cited this case not merely as proving the existence of the rule that a lease in futuro, when a lease in possession only is authorized, is void, but as illustrating the strictness of its application, for if in Pugh v. Leeds, the language of the lease had been such as necessarily to exclude the day of its execution, it is certain that it would have been held to be void, although to commence in possession on the following day; nor is the rule, although, perhaps, too rigidly applied, to be condemned as unreasonable and arbitrary. On the contrary, it has always been regarded, and justly regarded, as necessary to the protection of those who haye a present or future interest in the due execution of a leasing power; and hence, Chancellor Kent observes, “ that where a power to lease is uncircumscribed it is liable to abuse, and to be carried, even with upright intentions, to an extent prejudicial to the interest of the cestui gue trusts, or parties in remainder (4. Kent. Com. pp. 106,107).
The necessary conclusion, from the observations that have *148 been made, and the authorities that have been cited, is, that the lease to Hodges, under which the appellant claims, was void in its creation and upon its face, was unauthorized, and, in effect, forbidden by the terms of the will. As Hodges had no title at all, he could pass none to the appellant, even if the latter is to be regarded as a bona fide purchaser. He knew that the lease to Hodges was from the trustee under the will. He was bound to inquire into the provisions of the will, and was therefore bound to know that the trustee, in making the lease, had exceeded his powers and violated his duty. It is true that a Court of Equity, in many cases, will aid the defective execution of a power in favor of a bona fide purchaser; but assuredly no Court of Equity could grant this aid by reforming an instrument in execution of a power, in a case like the present. No Court of Equity could strike out the 20th of December, 1849, the true date of the execution of the lease in question, and substitute the 1st of May, 1850, so as to make the lease valid upon its face, as a lease in possession. Equity aids the defective execution of a power, in order to carry into effect the true intention of the parties—the intention which, in proper form, they have failed to express; but Equity, under pretence of reforming, never alters an instrument in execution of a power, so as to make it assert a falsehood, by striking out the intention which its words plainly express, and substituting another that they were never meant to convey. (Sugden on Powers, 341-421.)
There is another ground upon which the lease to Hodges must be held to be void, and must have been so pronounced, even had it been valid on its face, by making the term of years which it grants commence in possession from the date, of its execution ; the lease was, in effect, the grant of a reversion, and was therefore necessarily to commence in possession upon a future day. It appears from the evidence that at the time of the execution of this lease, there was a valid outstanding lease of the premises, which was not to expire until the first of May ensuing. The existence of this lease was a bar to an immediate entry by Hodges. He could not have taken possession until the first of May, and his lease, if operative at all, could have operated only as the grant of a reversion—an effect which, as we have seen, the terms of the will, and the law applicable to those terms, forbid us to give it,
*149 Another objection was stated to the validity of the lease in question, which we think cannot be sustained. It contains a clause declaring that it may be continued for two further terms of 21 years each, upon the same terms, at the option of the lessee ; thus placing it in his power to convert the lease into the grant of a term of 63, instead of 21 years. But, although this clause, as exceeding the authority of the trustee, was unquestionably void, it does not follow, nor can we say, that it rendered void the prior demise for 21 years. It is an established doctrine in England, that, where a lease under a power is granted for a longer term than is authorized by the power, although it is void at law, it is good in equity for a term of years corresponding with the power, and is void only for the excess. (Sugden on Powers, 545; 4 Kent. Com. p. 107, note (d), and cases there cited.) According to this doctrine, had the lease in question been granted, even for an absolute, instead of an optional term of 63 years, we could not for that reason have declared it to be void, but, as a Court of Equity, must have sustained its validity as a term for 21 years, by cutting off the excess.
We proceed to the next main objection to the validity of the lease, to which we are also of opinion that no satisfactory answer has been given, namely, that the rent reserved in the lease, was not the best which it was the duty of the trustee to obtain, but was far less than, it was proved upon the trial, he could have obtained. Upon this question, a very few remarks will suffice to explain our views. It was proved upon the trial, by the witnesses for the plaintiff, and their testimony was uncontradicted, that, at the time of the execution of the lease in question, a rent of more than double that reserved in the lease could with certainty have been obtained. Upon this evidence, it was found by the judge at special term that such substantially was the fact; and this finding we must hold to be conclusive. As to the facts, therefore, upon which the question depends, there is, in truth, no doubt, nor can we perceive that any has been raised in respect to the law. The counsel for the appellant was certainly mistaken in supposing, that, where the duty of reserving the best rent that he could obtain is imposed upon the trustee of a power, nothing more than good faith in the discharge of the duty is required of him; so that, unless fraud, which is never to be presumed, is *150 actually proved, a lease granted by him is to be sustained as valid, however inadequate the rent reserved, and however clear the proof that a higher rent might readily have been obtained.. We think, on the contrary, that the duly thus imposed upon a trustee, as plainly requires the exercise of reasonable diligence in its discharge as that of good faith; so that when it clearly appears that the rent reserved in a lease granted by him was plainly inadequate, when the lease was executed, and that a higher, in the exercise of due diligence, could have been obtained, the neglect of the trustee may be justly regarded as a breach of his duty and of his trust, sufficient to invalidate his act. In the case before us, we think that the proof is conclusive to show that a rent largely exceeding that reserved in the leasé, with reasonable diligence, might have been obtained, and that the gross negligence of the trustee, and his manifest disregard of the provisions of the will, in not obtaining a more adequate rent, are sufficient grounds, even if we reject the imputation of fraud, for adjudging the lease in question to have been void as soon as it was executed.
• We have now fully considered the case upon its merits, and it is only a technical objection to the maintenance of the action in its present form, that remains to be noticed. The objection is, that the present trustee, Wyckoff, was alone competent to bring an action for setting aside the leases in question, and, it is contended that, upon the sole ground that he is not the plaintiff, if all other objections are overruled, the judgment appealed from should be reversed, and the complaint be dismissed.
It was not denied by the counsel for the appellant that it has long been an established rule.in Chancery, as was abundantly proved by the cases cited for the plaintiff, that when a trustee refuses to commence an action, that the interests of the cestui que trust require should be brought, the latter, upon the ground of that refusal, may commence and prosecute the action in his own name, making the trustee a party defendant; but it was insisted by the counsel that the Rev. Stat. have abolished this rule, since, by vesting in every case of an express trust, the whole estate, legal and equitable, in the trustee, they have made him alone competent to bring an action for its recovery or protection (1 R. S. p. 729, § 60); but it seems to have escaped entirely the attention of the counsel, that the words in the section of the *151 R. S., to which, he referred us, which vest the whole estate, in law and in equity, in the trustees, are followed by the words, “subject only to the execution of the trust,” and that the same section, for the purpose of removing all doubt as to the mode of compelling the execution of the trust, also declares that, although the persons for whose benefit the trust is created, take no estate or interest in the lands, they “ may enforce the performance of the trust in equity which can only mean “ enforce its performance” by a suit in their own names against the trustee. The present action, in our opinion, is precisely of this character, for its sole object so far as relief is sought against the trustee, is “ to enforce the performance of his trust,” by requiring him to make a new and proper lease, and it is brought by a person for whose benefit'the trust was created. When it is brought to the knowledge of a trustee having a power to lease, that a lease by a former trustee, in which a very insufficient rent is reserved, is void upon its face, it is his duty, in the faithful discharge of his trust, disregarding the existence of the former lease, to make a new lease, in which a full and sufficient rent shall be reserved; and to enable him to do this, it is not necessary that the former lease, if void in law, should be set aside,—the new lease, if a valid execution of the power, displaces and extinguishes the former, and takes immediate effect (Miller v. Mainwaring, Cro. Car. 397, Crabb’s Law of Real Property, § 1,300). In this case the relief sought by the complaint is, that the trustee may be directed to make a new lease in conformity to the provisions of the will, and this direction is found in the judgment. The complaint therefore asks that the trustee may be compelled to perform his trust, and the judgment decrees its performance, at the suit of a person for whose benefit the trust was created. We cannot doubt that the suit was properly brought, and the proper judgment rendered.
To conclude, our decision is, that the finding of facts and the conclusions of law in the judgment appealed from, are in all respects correct, and the relief granted exactly that which the facts and the law of the case entitled the plaintiff to demand.
The judgment must therefore be affirmed with costs.

 In. 4 Kent’s Commentaries there is a valuable note and collection of cases on the general question, whether in computing time from an act or event the day is to be included or excluded, 4 Kent. Com. p. 95, note (b.)—Reporter.