Woodruff, J. (dissenting.)
—From the general scope of the will of the testator, Richard Ray, the construction, validity, and effect of which is now before us, and also from its specific details, it is quite apparent that he desired and intended to provide that his children should enjoy his estate during their lives, (subject to the provision made for his widow, and the bequests' to his cousins,) and that their issue should succeed thereto, if there should he such issue to enjoy it; and that if there should be no such issue, then that the estate should go to children of his brother and sister, and to their issue. In other words, that his own descendants should enjoy his estate, and failing such descendants, it should pass to descendants of his brother and sister. There is a plain attempt on the part of the testator, to- secure that result, and in view of what appears to me his obvious intention in this respect, the inquiry is, how far has he, by his will, secured the object he had in view ? Next, may the will so operate in conformity with the language employed by him ? and thirdly, does the will qualify the general design that the estate should, in certain contingencies, pass to the children of his brother and sister, by limiting it to some only of such children in any possible event, or if it pass at all, must it go to all the children who, at the death of his said brother and sister, may be living, whether born before or after the death of the testator, and whether born before or after the happening of the contingency upon which he directed such estate to pass to his brother’s and sister’s children?
The answer to the first question is contained in the answer to the other two, and the validity of the will may depend upon the answer to the last question, for, having given life estates to his two children, and made the contin *309 gency, upon which the estate shall go over, the death of both without issue, if the limitation over be to such children of his brother and sister as may survive them, and they should be living when the event happens, it will still remain uncertain who of their children will take. That is, the two children must die, and the brother and sister (if - then living) must die, before it can be ascertained who are entitled to take, under the limitation over on the death of his children without issue, and so the limitation would be made to depend upon the duration of more than two lives, and the estate be rendered unalienable for a period longer than is allowed' by law.
1. The primary object which, in pursuance of the general intention of the testator, he designed to secure, viz., the enjoyment of his' estate by his children and their issue, he did secure by the third, fourth and fifth clauses of the will by which his personal estate was to be held in trust and for theuse of his children, and to be paid to them on their attaining, the age of twenty-four years respectively, and in case of their death before attaining that age, leaving issue, then to be paid to such issue; and by which, also, all his real estate was devised to his children (respectively) for life, with remainder to the child or children which they might respectively leave, to be had and held to his, her, or their use forever.
Under these clauses the issue of his children, respectively, living at his death, would take the remainder of his real estate in fee, and by express limitation after the termination of the life estates given to such children respectively.
And as to his personal estate, the shares of the children would pass to them absolutely at the age of twenty-four, if then living, (subject only to a qualification, not now material, in case of marriage without the consent of his widow,) and nothing could divert it from them, or from their issue after them, unless the provisions of the sixth section, to be hereafter noticed, operate to divert the personalty to his nephews and nieces in case his children die without leaving issue.
*310 • The testator thus secured to his children and to their issue, after their decease, the enjoyment of all his estate, real and personal.
2. The design of the testator to preserve his estate in his own family in case his children left no issue, i. e., in ■ case by the death of his children without issue there should be no lineal descendants of the testator living, was sought to be further secured by the sixth clause in the will.
In this clause the testator contemplated and meant to provide for the exigencies upon which his estate should pass to descendants of his brother and sister on failure of lineal descendants of himself.
That failure would happen, in case at his death there were no persons in being who could take under the third, fourth, and fifth clauses of his will, or in case there were such persons then living, but they should all die without leaving lawful issue. Or in case children .born to the testator should die before his decease leaving no lawful issue.
This event he provided for in two modes :
First:—“In case I have no child or children living at the time of my death.”
Second.—“In case.such (i. e: all my) children should die without lawful issue;” “and thus I should have no lineal descendants,” then he gives, &c.
The event upon which the estate was to.go over, viz., failure of lineal descendants, might happen in either of those modes, and those he provides for. The contingency was failure of lineal descendants, and this would not happen if his children died in his- own life, leaving issue, and such issue would take, if living, upon the just construction of' the previous clauses in connection with the sixth.
It is argued that by this language he provided only for the failure of lineal descendants (having neither children nor issue of children) at the time of his death, and that, .therefore, as he' left children, the event never happened, and never can happen, upon which the estate was to go over, and the estates given by the previous clauses became, *311 and were, when they took effect, freed from any such contingency.
To my mind, the conclusive answer to. this suggestion is, that he provides for the death of a posthumous child without issue, which, by our statute, means without issue living at the death of the ancestor of such issue, viz., the posthumous child. A posthumous child could not die in the lifetime of the testator leaving issue, neither could such child die in the lifetime of the testator. Provision therefore, for the possible death of such a child without issue provides for an event which can only happen after the decease of the testator.
The ordinary meaning of the language, moreover, indicates that the testator meant in case all of his children— “such, children,”—the converse of no children nor posthumous child, i. e., any child or children he then had, or might have, including any posthumous child, should die without issue.
Again, our statute gives, the interpretation of dying without issue, and makes it mean in case such children should die without lawful issue living at their death. (1 R. S. 724, § 22.)
And the words, “ and thus I should have no lineal descendants,” confirm and define this intention of the testator, that failing his own children, and failing the issue of any children, then, and in that event, the estate should go over to descendants of his brother and sister.
The event upon which his estate was limited over was one which might have happened at his death, or which might happen on the subsequent death of all his children without issue. ' The first exigency never arose, as he left children him surviving. The second may happen, and whether it would happen could not be determined, until the death of all his children. This alone did not restrain the alienation beyond the period allowed by law. Had he left more than two children this condition might, by itself, have defeated the will since the limitation would have then depended upon more than two lives in being, until the *312 expiration of which it could not be determined whether the estate given to his children and their issue would be defeated or not. As he left but two children it will be absolutely certain at the death of the survivor (Madame de Courval) whether by the limitation in the will, the estate would pass to descendants of his brother and sister, and in that respect there is therefore no invalidity in the limitation over. (Ford v. Griffen, 1 Bosw. 123,1 R. S. 726, § 41, 773, § 1, 2 R. S. 57, § 5.)
3. But it is argued that even if the event upon which the limitation over is to operate,- is one which may take place after the death of the testator, and which will happen (if ever) at the expiration of two lives in being, at the death, i. e., at the death of Madame de Courval, still the limitation is void because it cannot be known to whom the estate is to pass on the happening of the contingency, until after the death of the testator’s brother Robert and his sister Mary, and so there are two more lives which must expire before the estates will vest absolutely, and -before an absolute fee in possession can be conveyed. (1 R. S. 123, §§ 14, 15.) That the children of such brother and sister cannot take until it is known which of them will survive their -parents, and so the future estate limited over may still remain contingent, notwithstanding the termination of two lives in being at the death of the testator, upon the expiration of which the limitation was, by the language of the will, to become operative.
Assuming for the present, that the inference from this construction of the testator’s will is unavoidable, I proceed to inquire whether the construction is itself correct.
The question is, to whom, by the true meaning of the will, was the estate to pass under the limitation over? The event upon which it was to go over being ascertained as above.
This depends upon the point of time at which it could be ascertained, who were to take under the limitation.
The testator says, in case the events happen, by which he “ thus should have no lineal descendants,” I give, devise *313 and bequeath my whole estate, real and personal, to the children whom my brother Robert Ray, and my sister Mary, (wife of John A. King,) may leave, or the child or children of any who may die before me, (such last mentioned child or children to inherit only its father’s or mother’s share.)
The persons so designated must be either :
1st. Children of his brother and sister, living at the death of the testator, and the issue of any who may have died before him.
2d. Children of his brother and sister, living at the happening of the contingency on which the estate was to go over (i. e., the death of the testator’s children without issue) and the issue of any'such first named children, who died before the testator.
3d. Children of his brother and sister, living at the happening of the said contingency, and the issue of any such children who may have died at anytime theretofore, before or since the testator’s death ; or
4th. Children of his brother and sister, who may survive them, and so literally be left by them, and the issue of such of their children as may have died before the testator; or
5th. Children of his brother and sister last named, and issue of any children who may have died, whether before or since the testator.
Now, in relation to either of these constructions, which includes, among those who are to take by the terms of the will, issue of children of the brother and sister who die after the testator, the plain and exclusive designation of those who may take as issue by the terms, “ the child or children of any who may die before me,” seem to me to forbid a construction which would allow any children of those who die after the testator, to take as devisees. Such construction is not within the words of the will, and it is not necessary nor rendered probable, in order to carry out the general design of the testator.
The construction which the whole language seems to me to best warrant, is that which determined, at the death of *314 the testator, who under this limitation over were the objects of his bounty, viz.: the then children of his brother Robert, and his' sister Mary, and the issue of any of their children who died before him. The testator desired to provide, so far as he reasonably could, to secure the estates to his descendants, or to the descendants of his brother and sister, and may he reasonably supposed to care little about providing for their children, or issue of their children, whom he should never see or know—when he had provided for his own children and their issue, and failing these, for all the nephews and nieces, and issue of nephews and nieces dying, whom he had, or should at his death have had any knowledge of, he might reasonably feel that he had done enough, and being himself a lawyer, and sensible of the uncertainty of the effect of wills that-attempted to provide for remote descendants or persons not in being, he may well' have rested with such provision for nephews and nieces, and issue of deceased nephews and nieces, in being at his death.
Having, at the time of his decease, nine nephews and nieces, (children of his said brother and sister,) his full purpose might be accomplished without going further:
But still more strongly, the designation of those who were to take as children of nephews and nieces, by the words “the child or children of any who may die before me,” indicates that he meant that it should be determined at .his death -who should take under the limitation over. For if he designed that any other period should be taken to determine who the persons were to whom the estate' should pass, and did not mean to confine it to persons whom the testator himself had seen or known, why did he confine the devise over among grandchildren of his brother and sister, to those whose parents died before him?
The limitation, to children of my brother and sister,'and the child or children of any who may die before me, indicates that it was the time of his own death at which it was to he determined who should take under the -gift to descendants of his brother and sister, and. that he meant by the *315 words he used to designate a class of persons then answering the description.
It must, however, be conceded that the use of the word “leave,” in this same clause, “to the children whom toy brother Robert Ray, and my sister Mary, the wife of John A. King, may leave, or the child or children of any who may die before me,” if that word must be taken in the sense of leave at their death, is fatal to this construction. But I do not deem it necessary so to read it, nor that the testator so used it. Indeed, the very designation of the children of deceased children who were to take, is inconsistent with that reading; they were those only whose parents died before the testator, they were to be those living at his death—and the general' purpose of the testator is, in this particular, I think, sufficiently clear to indicate that he used the word in the sense of the word have, as a then present fact—and so read, the whole will become harmonious, conformable to the general design of the testator, and not inconsistent with any particular intent which appears' in any part of the will.
Whether or not, at the moment of penning the will, the thought was passing in his mind that he should survive his brother and sister, and led to his employment of a word which was not apt to express his meaning, (if they survived him,) the whole sentence does not indicate to my mind that he meant to make their death before himself, any condition of the devise or of its construction; nor that he meant, by the use of that word, to postpone, the determination of the children who should take, to a period so remote that his whole purpose in regard to his nephews and nieces might be thereby defeated.
It is'to be assumed, as a rule of construction, that the testator knew the law, and if-the language he employs be susceptible of a reading consistent with the law, we ough t to assume that he so used it, and the intent to fix the time of his own death as that at which the persons who should take, as descendants of his brother and sister, were to be ascertained, seems to me so clearly indicated, that in the *316 gift over, the word “leave” has no operative meaning either as a condition or as a postponement of the time when those. persons are to be ascertained, or, as deferring the vesting of the estate, or interest, so devised, until after his brother and sister’s death.
The testator, in this sixth clause, has created the difficulty by expressing himself with greater conciseness than clearness, and yet, I think, the intent is apparent.
In this view of the construction of the will, the objection that the will is invalid in respect of the limitation over by the sixth clause, wholly fails; and (no child of the testator’s brother or sister having died, leaving issue, in the lifetime of the testator) the judgment appealed from should be affirmed, except so far as it declares that the . estate and property which, upon the death of Madame de Courval without issue, vests in the children of Robert Ray and Mary King, vests in those children living at the happening of the contingency, and that it is subject to let in after-born children. In those particulars it should be modified so as to declare that, in the event of the death of Madame de Courval without issue, such estates and property are by the said will limited over to the children of the said Robert Ray and Mary King, who, were living at the death of the testator.
The foregoing view of the construction of the will in question, not being in accordance with the opinion of my associate, brother Robertson, and the case having been submitted to four of the justices, I add a few observations upon the question, whether, by the construction of the will, the estate was not limited, on the death of Madame de Courval, to such children of Robert Ray and Mrs. King, as should then be living, and the issue, if any, who should die before the testator ?
First.—It is obvious that if this be the true construction, then, as before, the will is valid, and the limitation over good. For, in-that view of its meaning, the estate will vest absolutely at the' death of the survivor of the testa *317 tor’s two children, and an absolute fee in possession can then be conveyed. But,
Second.—If we depart from the time of the testator’s death, as the period indicated for ascertaining those who are to take under the limitation over, I find no words of the will indicating the happening of the contingency as the time to which the word leave or have is to refer.
And there is, therefore, greater difficulty, not only in gathering from the language itself, that the testator meant to designate the children which his brother and sister should have, but also in saying, if that construction should obtain, that it did not open to let in after-born children, which would be equally fatal to the validity of the will, as if it were held that it could not be determined until the death of Robert Ray and Mrs. King, who should take, and they should be living at the death of Madame de Courval.
I still prefer the former construction. Nevertheless, if my brethren agree that the time of the death of Madame de Courval is the period at which the persons who are to take, is definitely and finally settled, and that they are those who are then living, the will is sustained. The result would not, as I perceive, affect the management of .the estate henceforward, during the life of Madame de Courval, otherwise than the view I have above taken, and • I should be disposed to concur, for the purpose of a determination which the parties have apprised us they wish to present to the court of last resort for review and adjudication.